# NO. 24-2082

In The

# United States Court Of Appeals
## For The Fourth Circuit

## PACEM SOLUTIONS INTERNATIONAL, LLC,

*Plaintiff - Appellant,*

v.

## U. S. SMALL BUSINESS ADMINISTRATION; ISABELLA CASILLAS GUZMAN,
## In her capacity as Administrator,
## U.S. Small Business Administration,

*Defendants - Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA AT ALEXANDRIA

―――――――――

### BRIEF OF APPELLANT

―――――――――

**Milton C. Johns**
**EXECUTIVE LAW PARTNERS PLLC**
**11130 Fairfax Boulevard**
**Suite 303**
**Fairfax, VA 22030**
**(571) 500-1010**
**mjohns@xlppllc.com**

*Counsel for Appellant*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. <u>24-2082</u>      Caption: <u>PACEM Solutions International v. US Small Business Admin</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>PACEM Solutions International</u>
(name of party/amicus)

_____

 who is _____<u>Appellant</u>_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO


2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:




3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?                    ☐YES ☑NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
     If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?                    ☐YES ☑NO
     If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.   Is this a criminal case in which there was an organizational victim?        ☐YES ☑NO
     If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Milton C. Johns                          Date:        11/8/2024

Counsel for:  PACEM Solutions International

Print to PDF for Filing

## TABLE OF CONTENTS

**Page**

DISCLOSURE STATEMENT

TABLE OF AUTHORITIES.................................................................... iii

JURISDICTIONAL STATEMENT ..........................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ......................................2

STATEMENT OF CASE ...........................................................................3

    Loan Origination, The Cares Act and Payments to PSI ...................................3

    PSI's Attempts to Seek Answers from SBA .....................................5

    PSI v. SBA: U.S. District Court of Eastern District of Virginia.....................7

    Statutory Background – CARES Act .............................................9

    The Administrative Record...........................................................11

SUMMARY OF ARGUMENT...............................................................14

STANDARD OF REVIEW ....................................................................15

ARGUMENT ........................................................................................17

    (1)    The Administrative Record Failed to Reveal a "Satisfactory Explanation" for the Actions of the SBA, Including a 'Rational Connection Between the Facts Found and the Choice Made'." .........17

    (2)    The Administrative Procedure Act Does Not Permit *Post Hoc* Rationalization to Support Agency Action.........................................18

    (3)    Plaintiff Was Not Afforded Adequate Due Process............................22

i

(4)     Whether the District Court Decision, Assuming *Arguendo* It Was Not "Arbitrary And Capricious" Based on the Issues Above, Was as a Matter of Statutory Interpretation, "Not In Accordance With Law," 5 U.S.C. § 706(2)(A), *I.E.*, Not In Accordance With Congress' Intent In Enacting Section 1112 of The CARES Act ..................................................................25

CONCLUSION ..........................................................................29

REQUEST FOR ORAL ARGUMENT ....................................29

CERTIFICATE OF COMPLIANCE .......................................31

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Burlington Truck Lines, Inc. v. United States*,
371 U.S. 156, 83 S. Ct. 239, 9 L. Ed. 2d 207 (1962) ...................................21

*Camp v. Pitts*,
411 U.S. 138 (1973)..........................................................................16, 17, 19

*Casa De Maryland v. U.S. Dep't of Homeland Sec.*,
924 F.3d 684 (4th Cir. 2019) .........................................................................16

*Catawba Cnty., N.C. v. EPA*,
571 F.3d 20 (D.C. Cir. 2009).........................................................................18

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
467 U.S. 837 (1984).................................................................................15, 16

*Encino Motorcars, LLC v. Navarro*,
579 U.S. 211, 136 S. Ct. 2117 (2016) ...........................................................16

*Goodman v. Diggs*,
986 F.3d 493 (4th Cir. 2021) .........................................................................15

*Hamdi v. Rumsfeld*,
542 U.S. 507 (2004)........................................................................8, 15, 23

*Loper Bright Enterprises v Raimondo*,
144 S. Ct. 2244 (2024)...................................................................15, 16, 27

*Mestanek v. Jaddou*,
93 F.4th 164 (4th Cir. 2024) ..........................................................................16

*Miller v. Garland*,
674 F. Supp. 3d 296 (E.D. Va. 2023) ......................................................17, 18

*Motor Vehicles Mfgs. Ass'n v. State Farm Mutual Auto Ins. Co.*,
463 U.S. 29 (1983)...................................................................................2, 16, 17

*Ren v. United States Citizenship & Immigr. Servs.*,
    60 F.4th 89 (4th Cir. 2023) ........................................................................17

*Virginia Hosp. & Healthcare Ass'n v. Roberts*,
    671 F. Supp. 633 (E.D. Va. 2023) .............................................................16

**Statutes**

5 U.S.C. § 706 ...........................................................................................15, 19

5 U.S.C. § 706(2)(a) ...........................................................................2, 3, 15, 25

15 U.S.C. 636(a) ...............................................................................................10

15 U.S.C. § 901 ...................................................................................................1

28 U.S.C. § 1331 .................................................................................................1

28 U.S.C. § 1361 .................................................................................................1

Administrative Procedure Act (APA) ......................................................*passim*

CARES Act ................................................................................................*passim*

CARES Act § 1112 ....................................................................................*passim*

CARES Act § 1112(b) ..................................................................................25, 26

CARES Act § 1112(c) ..........................................................................................9

CARES Act § 1112(c)(1) ......................................................................................9

CARES Act § 1112(c)(12) ..................................................................................25

Freedom of Information Act (FOIA) ....................................................................6

Public Law 116–136, Mar. 27, 2020, 134 Stat. 309 .......................................3, 9

**Constitutional Provisions**

U.S. Const. amend. V .................................................... 3, 8, 12, 13, 20, 21, 23, 24, 29

U.S. Const. amend VI ...............................................................12, 13, 20, 21

**Rules and Regulations**

13 C.F.R. § 114.109 ....................................................................................7, 22

13 C.F.R. § 120.524(a) .................................................................................28

13 C.F.R. § 120.524(a)(1-5)...........................................................8, 20, 27, 28, 29

13 C.F.R. § 120.535(a) .................................................................................28

15 C.F.R. § 9011(c)(1)(A)i .........................................................................26

Fed. R. App. P. 3 .............................................................................................2

Fed. R. App. P. 4 .............................................................................................2

Fed. R. Civ. P. 60 ...........................................................................................2

## JURISDICTIONAL STATEMENT

This is an appeal of a ruling of Summary Judgment against PACEM Solutions International, LLC ("PSI").

On December 13, 2023, Petitioner PSI filed a Complaint with the Eastern District of Virginia. JA07. This action was brought pursuant to 28 U.S.C. § 1331 because it arose under the CARES Act, in relevant part 15 U.S.C. § 901 et seq and 28 U.S.C. § 1361. This Court maintains personal jurisdiction over Defendants as a Government Agency and administrator of that Agency. JA07.

PSI, a Virginia limited liability company, alleges that the Appellees Small Business Administration ("SBA") and SBA Administrator Isabella Casillas Guzman violated the Administrative Procedures Act ("APA") in failing to fulfill their obligation to make the final four of six loan payments on behalf of PSI under the CARES Act. JA07.

After the filing of the Administrative Record, cross summary-judgment motions were filed (JA394, JA398) and oral argument was heard on September 6, 2024 before the Honorable Leona Brinkema. JA399.

After a brief oral argument, the Court denied Summary Judgment on behalf of PSI and granted Summary Judgment on behalf of the SBA and Guzman. The Order was entered on September 6, 2024. JA412.

1

On October 4, 2024, PSI filed a Motion to Alter Judgment Pursuant to Fed.

R. Civ. P. 60. JA414.  The SBA filed an opposition, oral argument was waived and

the motion was denied per Order of October 21, 2024. JA432.

On October 25, 2024, Petitioner PSI timely noted its appeal. JA435.

This Court has jurisdiction under Federal Rules of Appellate Procedure 3

and 4 to hear this appeal of Summary Judgment issued by the U.S. District Court

for the Eastern District of Virginia.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

(1) Whether the District Court erred in its decision to grant Defendants' Motion for

Summary Judgment while denying PSI's Cross-motion for Summary Judgment

based on the undisputed fact that the SBA Administrative Record before the District

Court did not include the requisite "satisfactory explanation for its actions, including

a 'rational connection between the facts found and the choice made'." *Motor*

*Vehicles Mfgs. Ass'n v. State Farm Mutual Auto Ins. Co.*, 463 U.S. 29, 43 (1983).

(2) Whether the District Court erred in relying on a *post hoc rationalization* put

forward by Counsel for Defendants in the District Court for the first time based on

documentation not available to the SBA at the time of the SBA's original June

2020 decision to stop payments to determine that the actions of the SBA were not

"arbitrary, capricious, an abuse of discretion or otherwise not in accordance with

law." 5 U.S.C. § 706(2)(A).

2

(3) Whether the District Court erred as a matter of law in holding, without any further explanation, that "the plaintiff has gotten adequate due process." JA409.

(4) Whether the District Court decision, assuming *arguendo* it was not "arbitrary and capricious" based on the issues above, was as a matter of statutory interpretation, "not in accordance with law," 5 U.S.C. § 706(2)(a), *i.e.*, not in accordance with Congress' intent in enacting section 1112 of the CARES Act.

## STATEMENT OF CASE

### Loan Origination, The Cares Act and Payments to PSI

On August 10, 2018, PSI, through Access National Bank, signed a promissory note for a $5,000,000 SBA international trade loan in the form of a "Financing and Security Agreement," subsequently designated SBA Loan NO. 2843337007. JA205, JA93. Around May of 2019, Access National Bank merged with Union Bank & Trust, forming Atlantic Union Bank, which continued to service PSI's SBA Loan. JA07. On March 19, 2020, as part of the Fifth Amendment to Promissory Note and Waiver Agreement, PSI's lender "agreed to waive the existing Default and amend the principal repayment provisions of the Note." JA59.

On March 27, 2020, Congress passed and the President signed into law, the CARES Act. *See* Pub. L 116-136. On April 23, 2020, PSI's lender advised PSI by email "just got notice that the SBA will be covering payment starting with the

April payment. So don't need to worry about this." JA418. While there is no formal documentation within the Administrative Record to reflect that the SBA accepted the PSI loan for subsidy payments under the CARES Act, the SBA issued the first two of six subsidy payments under Section 1112 of the CARES Act on June 1, 2020. JA124-125. The fact that the Government paid the April and May payments on behalf of PSI establishes that PSI was accepted into the program prior to the April payment due date. These payments reflected the first two of the intended six payments. JA125. While the payments were made for April and May, there are no contemporaneous documents within the Administrative Record to reflect those payments.

On July 1, 2020, August 1, 2020 and September 1, 2020, the SBA failed to pay the CARES Act subsidy payment for June, July and August 2020, respectively. JA185.

Neither the SBA nor Atlantic Union Bank advised PSI that the payments were stopped, let alone provided a reason for that decision. There is no contemporaneous documentation within the Administrative Record that reflects the decision to stop payments or provides any basis for the decision to discontinue payments subsequent to the June 1, 2020, payments.

**PSI's Attempts to Seek Answers from SBA**

On September 1, 2020, after multiple inquiries by PSI's lender about why the third and fourth subsidy payments were not paid, an SBA loan specialist e-mailed a loan servicing representative for PSI's lender. This SBA loan specialist advised that "[i]t appears the loan has been misreported and showing delinquent which may have resulted in not receiving payments. You can try to correct the reporting discrepancies with Colson but there is no guarantee payments will be retroactive. As you may know the program payments will stop in September 2020 if the first payment was provided by SBA in April." JA37. Nothing in the Administrative Record suggests that this email was forwarded to PSI – it was not.

Devoid of information from either the lender or the SBA, on February 12, 2021, PSI through the SBA Ombudsman requested information about why the third through sixth subsidy payments were not paid. JA169. On May 19, 2021, the SBA Ombudsman provided PSI with a May 7, 2021 internal SBA memo suggesting that someone within the SBA had determined that PSI was ineligible for Section 1112 subsidy payments, ostensibly because "the loan has been in default since late April 2020, which was reported to the Agency by the lender in May 2020." JA189-190.

On May 27, 2021, counsel for PSI's lender confirmed in an email that it appears that "the Bank did not report a default in May of 2020." JA419. On May 31, 2021, PSI involuntarily refinanced Loan No. 1080085275. JA100.

5

In June 2021, PSI initiated a Freedom of Information Act ("FOIA") request seeking documentation related to the CARES Act ineligibility determination as described in the May 7, 2021 memo. PSI sought emails, texts and written communications including those between the SBA and the lender as well as 1502 reports for the period from January 2020 to the present. JA321. In response, the SBA FOIA office represented that there were no documents responsive to these requests. JA328. As that response was inconsistent with the SBA's position that the loan was in default as of April 2020, PSI submitted a FOIA appeal and while that was answered, no responsive documents were ever produced.  JA349, JA341, JA352.

As a final effort to resolve this issue, PSI submitted its "Form 95" administrative claim, requesting that "the SBA promptly should pay PACEM the third, fourth, fifth and sixth subsidy payments for June-September 2020, totaling $3,100,000 in principle plus . . . continuing interest . . . until paid". JA179. By September of 2022, absent any response to the Form 95 claim, PSI engaged counsel to reach out to SBA counsel on this matter. Ultimately, SBA counsel confirmed the contents of a December 12, 2022 phone call with PSI counsel via a December 23, 2022 email referencing "SBA Loan 2842227007," that,

> SBA has formally denied the claim made by PACEM International Solutions [sic], LLC in their Form 95 . . . . PACEM's claim was for the payment of the four CARES Act Section 1112 subsidy payments that it claimed had not been credited to the above-referenced loan

6

number from September – December 2020 [sic].  After reviewing all of the documents submitted by PACEM, reviewing the loan itself and communication with the lender Atlantic Union Bank, SBA determined that PACEM is ineligible to receive Section 1112 payments under the CARES Act given, among other things, PACEM's loan and payment history."

JA366.

The SBA never replied to PSI's "Form 95" administrative claim "in writing by certified or registered mail if it denies your claim," as required by the SBA's own regulation, 13 C.F.R. § 114.109.  JA07.

**PSI v. SBA: U.S. District Court of Eastern District of Virginia**

PSI filed this suit on December 13, 2023. JA07. The matter was determined via cross-motions for summary judgment. JA412.  In response to PSI's cross-motion for summary judgment based on the Administrative Record submitted by the SBA, the SBA never suggested that PSI's loan was in default when the SBA made its initial CARES Act eligibility determination in connection with the SBA paying the first two of six subsidy payments on June 1, 2020; instead SBA counsel argued that the PACEM loan was a bad loan and that a missed payment was reported to the SBA and PSI no longer qualified for inclusion in the CARES Act subsidy program.

The only suggestion in the Administrative Record submitted to the Court below by the SBA that the lender "originated a loan that was not eligible for the

7(a) program," was in a "Privileged & Confidential" letter from the SBA to PSI's

former lender, dated November 10, 2023, advising that PSI's

> May 2020 amendment done by Atlantic Union Bank, after the
> announcement of the CARES Act, restructured the loan to extend the
> loan from June 15, 2020 to July 1, 2020.  The repayment terms
> required principal payments of $775,000 plus interest, on the first day
> of each month beginning June 1, 2020.  The borrower did not have
> history of making payments of principal and interest much less
> payments in that amount.  This appears to be an attempt by Atlantic
> Union Bank to receive payment in full for a loan that had experienced
> repayment issues from origination through the last amendment.  Such
> action would constitute a violation of 13 C.F.R. § 120.524(a)(1-5).

JA360-361.

The November 10, 2023 letter from the SBA to PSI's former lender only

became available to PSI when the Administrative Record was filed with the Court

below. Nothing in the Administrative Record contradicts PSI's due process

argument in its Form 95 administrative complaint that,

> [i]n *Hamdi v. Rumsfe*ld, 542 U.S. 507 (2004), the United States
> Supreme Court described the 'essential constitutional promises' of due
> process required by the Fifth Amendment before the federal
> government can deprive a person of life, liberty, or property, as 'notice
> and an opportunity to be heard . . . at a meaningful time and in a
> meaningful manner,' which has caused continuing damages to
> PACEM in exudes of $3,914,303.23, the amount due as of June 1,
> 2022.

JA188.

Nothing in the Administrative Record contradicts PSI's APA/due process

argument that the Defendants provided PSI neither "fair notice" nor "an

8

opportunity to be heard . . . at a meaningful time and in a meaningful manner" in connection with Defendants' decision to withhold disbursement of the four remaining subsidy payments on behalf of PSI.  JA07.

Subsequent to oral argument on the briefs, the court denied PSI's Motion for Summary Judgment and granted summary judgment on behalf of the SBA and Ms. Guzman. JA412. Ruling from the bench, Judge Brinkema stated that she was "satisfied in this case that the SBA had a sufficient record before it at the time it made its decision to stop the payments," and "It did not act in an arbitrary, capricious or illegal manner." JA399-410.

**Statutory Background – CARES Act**

At the time of its enactment, section 1112(c)(1) of the CARES Act stated: "The Administrator shall pay the principal, interest, and any associated fees that are owed on a covered loan in a regular servicing status (A) with respect to a covered loan made before the date of enactment of this Act and not on deferment, for the 6-month period beginning with the next payment due on the covered loan." Public Law 116–136, Mar. 27, 2020, 134 Stat. 309.

In accordance with Section 1112(c), the SBA will pay the principal, interest, and any "associated fees" that Borrowers owe on a "covered loan" in a "regular servicing status" to 7(a) Lenders for a six-month period.

A "covered loan" means a loan that is guaranteed by SBA under Section 7(a) of the Small Business Act (15 U.S.C. 636(a)). SBA Procedural Notice 5000-20020. While the statute does not define "regular servicing status," the applicable SBA procedure notice "defines" a "covered loan" and advised that "regular servicing" does not "include any loan that has been moved from 'regular servicing' into 'liquidation' status … prior to the first payment due date covered by Section 1112." Generally, a loan in regular servicing status "should not include any loan that is more than 120 days past due (as counted back from the first payment due date covered under section 1112.)" SBA Procedural Notice 5000-20020 updated 4/17/2020. JA146.

Under SBA SOP 50 57 2 in effect in 2020, the Lender was permitted to modify the terms of a 7(a) loan. "Frequently after an SBA loan has been disbursed, circumstances change and give rise to Borrower Servicing Requests. . . . As long as the Borrower is viable, when responding to a Servicing Request, the goal should be to meet the Borrower's short- and long-term needs without impairing the integrity of the SBA loan program, i.e., the ability to recover on the loan."[1] "Generally, the Loan Document should not be modified unless there has been a material change in the Borrower's circumstances since the loan was made." SBA SOP 50 57 2, Section B.

---

[1] https://www.sba.gov/sites/sbagov/files/2023-10/SOP_50_57_2_1.pdf

**The Administrative Record**

Based on information contained within the Administrative Record, the first document that was inserted into this record was an email chain that originated on August 27, 2020.  JA03-04. This is nearly three months after the June 1, 2020 payment and the decision to stop further payments.  Accordingly, there are no contemporaneous records that establish when the first payment was made, there are no contemporaneous records that indicate that the loan was reported as being, or is, in default and there are no contemporaneous records documenting the decision to make no further payments beyond the June 1, 2020 payments. In other words, there was no Administrative Record in June of 2020.

The first communication created by the SBA is dated September 1, 2020, and is in response to the bank's inquiries about the stoppage of payments.  The SBA advised that "it appears the loan has been misreported and showing delinquent." JA37.  There is no basis for this statement as this would have been the first document incorporated into the Administrative Record and therefore the SBA can cite to no basis for this statement of delinquency.  It was not delinquent.

While the record in its present state contains documents that were created prior to June of 2020, none of those documents were part of the Administrative Record until November 2020 or later. For instance, all of the loan and loan amendment documents were provided to the SBA by the lender subsequent to a

request from the SBA via email of November 16, 2020. JA134. While there are no

documents, contemporaneous or otherwise, within the Administrative Record to

reflect the status of the loan in March of 2020, both the lender in submitting the

PSI Loan for inclusion in the CARES Act subsidy program and the SBA in making

loan payments on behalf of PSI, agreed that the loan was in regular servicing status

or no payments would have been made.  The only information related to the status

of the loan in or around the May/June 2020 time period is a "1502 History" report

prepared on or after June 3, 2021.  JA01. This report reflects that the loan was

considered on time with payments as of April 7, 2020 and April 21, 2020. As of the

May 5, 2020 entry, the loan was mis[identified as being 30-60 days past due.[2]

Subsequent to inquiries from both PSI and the lender, the SBA sought

documentation related to the loan origination and history from the lender.  Those

documents reflect in pertinent part that after origination in August 2018, the loan

underwent a number of Amendments including the Fifth Amendment of March 19,

2020 (JA59-63) and the Sixth Amendment of May 22, 2020. JA55-58.

On March 19, 2020, prior to the passage of the CARES Act, the Fifth

Amendment to Promissory Note and Waiver Agreement was entered into between

PSI and Atlantic Union Bank (the Lender) to modify the repayment terms of the

---

[2] https://www.sba.gov/document/sba-form-1502-sba-form-1502-instructions.
Status #2 designates a payment 30-60 days delinquent.  Status #1 designates
payments are current.

loan. JA59-63.  This modification waived an Existing Default resulting from PSI's

failure to comply with the Debt Service Coverage Ratio. JA59-63. The waiver of

default was permitted under Section 8.2 of the Financing and Security Agreement

between PSI and the lender. JA220. Under the Fifth Amendment, payment terms

were amended to reflect that the principal Note balance of $4,650,000 was to be

paid, interest only, on the first day of each month until maturity.  The unpaid

principal of the Note together with all accrued and unpaid interest would be due

and payable in full on June 15, 2020. JA59-60.  In exchange for this modification,

PSI paid an extension fee and waiver fee along with costs, fees and expenses

incurred by the lender in connection with the modification. JA60.

On May 22, 2020, a Sixth Amendment to Promissory Note and Waiver

Agreement was entered into between PSI and the Lender again modifying the

repayment terms of the loan. JA55-58. Documentation completed by Atlantic in

connection with that modification titled "Product Package Details" specifically

stated that "as soon as the contract with the [a specified client] begins, which is

expected end of May/first week of June, the Borrower expects revenues in excess

of $80MM (consistent with 2016 and 2017 performance) and significant

profitability". JA50-51.  Under the Sixth Amendment, the payment terms were

adjusted to reflect that instead of the entirety of the Note principal becoming

payable on June 15, 2020, the principal would be paid over six equal monthly

installments of $775,000 starting with the June 1, 2020 payment and continuing

through the last payment of December 1, 2020.  JA55-56.

By notification of January 27, 2021, the Lender sent PSI a "Notice of

Default." This was the first such notice issued by the Lender to PSI related to this

loan. JA102, JA186.

## SUMMARY OF ARGUMENT

The trial court record on appeal presents a reversible effort administratively

and then judicially to legislate a new "bad loan" exception to Section 1112 of the

CARES Act, without any of the required contemporaneous administrative record

evidence of a decision by the SBA at the time it stopped making CARES Act

subsidy payments in or around July 1, 2020.

In June 2020, without notice and without a factual or legal basis, the SBA

stopped CARES Act subsidy payments to PSI.  While no explanation was

forthcoming for months, ultimately, the SBA advised the lender that the payments

were stopped because the loan was reported as delinquent in May of 2020.  More

than a year later, the SBA dropped its assertion related to default in May of 2020

and advised PSI that the loan was never eligible for inclusion in the CARES Act

subsidy program.

PSI asserts, and as confirmed through the Administrative Record, the SBA

had no basis in June of 2020 to assert that it was advised that the loan was in

14

default in May of 2020.  Further, nothing in the Administrative Record supports the later conclusion that the PSI loan was never eligible for inclusion.  Further, the SBA's failure to communicate with PSI in June 2020 related to the decision to stop payments was a violation of PSI's due process rights in that its right to receive payments was withdrawn without notice or the opportunity to be heard "at a meaningful time and in a meaningful manner."  *Hamdi*, 542 US at 533.

## STANDARD OF REVIEW

This Court reviews *de novo* a decision to grant or deny a motion for summary judgment. *Goodman v. Diggs*, 986 F.3d 493, 497 (4th Cir. 2021). The court must review the facts in a light most favorable to the non-moving party and give the non-moving party the benefit of all reasonable inferences.  In *Loper Bright Enterprises v Raimondo,* 144 S. Ct. 2244 (2024*),* the Supreme Court overruled *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), holding: "*Chevron* is overruled.  Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires."  *Loper*, 144 S. Ct. at 2273.

The standard of review is as presented in Section 706(2)(A) of the APA that directs a "reviewing court shall hold unlawful and set aside agency action . . . found to be arbitrary [and] capricious, . . . and/or unsupported by substantial evidence." 5 U.S.C. § 706. The Court must consider whether the agency has

articulated a rational basis for its decision. *State Farm Mut. Auto. Ins. Co.*, 463

U.S. 29, 50. "An agency satisfactorily explains a decision when it provides enough

clarity that its 'path may reasonably be discerned.'" *Casa De Maryland v. U.S.*

*Dep't of Homeland Sec.*, 924 F.3d 684, 703 (4th Cir. 2019) (quotations and

citations omitted). "If the agency provides such an explanation," the Court must

"uphold its decision," but "where the agency has failed to provide even that

minimal level of analysis, its action is arbitrary and capricious and so cannot carry

the force of law." *Id.* (quoting *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211,

136 S. Ct. 2117, 2125 (2016)). And a Court may not "supply a reasoned basis for

the agency's action that the agency itself has not given." *Virginia Hosp. &*

*Healthcare Ass'n v. Roberts,* 671 F. Supp. 633, 663 (E.D. Va. 2023).

In applying the "arbitrary, capricious" and "abuse of discretion" standard,

"the focal point for judicial review should be the administrative record already in

existence, not some new record made initially in the reviewing court." *Camp v.*

*Pitts*, 411 U.S. 138, 142 (1973).  As stated in *Mestanek v. Jaddou*, "we will uphold

an agency's decision so long as we find that the agency 'acted within a zone of

reasonableness.'" 93 F.4th 164, 170 (4th Cir. 2024) (pre-*Loper*); *but see Loper*, 144

S. Ct. at 2273 ("*Chevron* is overruled.  Courts must exercise their independent

judgment in deciding whether an agency has acted within its statutory authority, as

the APA requires.").

## ARGUMENT

**(1)    The Administrative Record Failed to Reveal a "Satisfactory Explanation" for the Actions of the SBA, Including a 'Rational Connection Between the Facts Found and the Choice Made'."**

As established in *Camp*, the Court must rely solely on the contents of the Administrative Record to support its decisions. With that foundation, the lower court erred in confirming the decision of the agency below. There is nothing in the Administrative Record upon which the lower Court or the SBA could rely to demonstrate that any decision to halt the subsidy payments was anything other than arbitrary and capricious.  The initial decision to stop payments on the SBA loan was made on or around June 1, 2020. As there was no Administrative Record as of June 2020, the SBA is unable to establish that it "acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision." *Miller v. Garland*, 674 F. Supp. 3d 296, 310–11 (E.D. Va. 2023) (quoting *Ren v. United States Citizenship & Immigr. Servs.*, 60 F.4th 89, 93 (4th Cir. 2023) (citations omitted)).  A decision in the absence of a contemporaneous Administrative Record "runs counter to the evidence before the agency[.]" *State Farm Mut. Auto. Ins. Co.*, 463 U.S. at 43.

The most obvious basis for a finding that the decision was arbitrary and capricious is the lack of any contemporaneous documentation in the Administrative Record that supports the SBA's claim that the Lender advised in May of 2020 that

the loan was in default in April of 2020.  In arguments below, the SBA cited to the

1502 report for May of 2020 as the basis for their decision in June of 2020.

However, there is no 1502 report of May 2020, or any 1502 report for that matter,

within the Administrative Record. There is a 1502 History report printed sometime

after June of 2021 that contains information reported in 1502 reports filed as early

as April 7, 2020.  This information was not part of the Administrative Record in

June of 2020 and therefore cannot be the basis for the June 2020 decision.

For the lower court to accept that the SBA's decision was not arbitrary and

capricious, "all that is required is that the agency 'define and explain the criteria

applied.'" *Miller*, 674 F. Supp. at 311 (quoting *Catawba Cnty., N.C. v. EPA*, 571

F.3d 20, 39 (D.C. Cir. 2009)).  As the APA allows reliance only on the

Administrative Record for this purpose and the Administrative Record in this

instance is devoid of any documentation contemporaneous with that June 2020

decision, there was no manner through which the agency could "define and explain

the criteria applied." *Miller,* 674 F. Supp. 3d at 311.  Because the agency could not

meet this threshold, the lower court erred in determining that the decision was not

"arbitrary and capricious," and should be reversed.

**(2)     The Administrative Procedure Act Does Not Permit *Post Hoc*
Rationalization to Support Agency Action.**

During argument of the Summary Judgment motions below, the lower court

pronounced that in May of 2021, despite lack of any documentation supporting this

position, the SBA established that the loan payments were stopped in June of 2020 because the loan was in default as of April 2020.

However, in arguing the Summary Judgment motion below, the SBA abandoned its argument related to the alleged June 2020 determination and advised that after a multi-year investigation, they determined that the loan was never eligible to receive Section 1112 payments under the CARES Act. This *post-hoc* determination was accepted by the lower court and was the basis for the denial of Summary Judgment on behalf of PSI. JA409. PSI's first and only notification of the determination that the loan was "never eligible" was when SBA counsel filed the Administrative Record in connection with the underlying litigation in May of 2024, nearly four years after the payments were stopped.

Post-hoc rationalizations are not permitted with regard to SBA decisions under the APA. *Cf. Camp,* 411 at 143. Further, even if the lower court accepted that it was appropriate for the SBA to deny the claim for a stated reason and then years later, claim that the denial was justified for an entirely different reason, that decision would not pass the "satisfactory explanation" bar.

The APA "confines judicial review of Executive Branch action to the administrative record of proceedings before the pertinent agency." *See* 5 U.S.C. § 706; *Camp*, 411 U.S. at 142. While the Administrative Record before this court contains information upon which the SBA could have based its later

19

decision, there is no articulation of the basis for that decision.  The November

10, 2022 letter to Atlantic indicates that the loan was "not eligible for the 7(a)

loan program" and that "servicing actions taken on this loan did not comply

with applicable SBA Loan Program Requirements."  JA360.  The November

letter provides information related to the origination, payment and amendment

history of the loan but does not indicate that any specific part of that process

was outside servicing requirements other than a general reference to 13 C.F.R.

120.524 (a)(1-5). JA360.

     The November 10, 2022 letter does reference an amendment to the loan in

May 2020 (the Sixth Amendment) which was executed after PSI's loan was

accepted into the CARES Act program. JA55-58. This required interest AND

principal payments starting June 1, 2020. This would have obligated the SBA to

cover four principal payments. The Court below considered this amendment as

confirmation that PSI and/or the lender was defrauding the government as prior

iterations of the loan terms were interest only. JA404. That however, was an

incorrect understanding of the facts and the terms of the prior modifications.

     The court below and the SBA ignored the terms of the Fifth Amendment that

preceded both the May 2020 amendment and, more significant, the passage of the

CAREs Act.  Under the Fifth Amendment dated March 19, 2020, interest only

payments were extended through and including the payment due June 1, 2020.

JA59-63. Thereafter, the Fifth Amendment required a balloon payment of the entire principal on June 15, 2020. JA59. The Sixth Amendment, entered after acceptance into the program, actually significantly decreased the SBA's obligation to PSI. The court below mistakenly determined that no principal payments were the obligation of the SBA until the Sixth Amendment, (JA405) but principal payments under the Fifth Amendment exceeded those of the Sixth Amendment by more than $1.5 million. However, neither the court below nor the SBA cited to any regulations governing inclusion in the CARES Act program that required that the terms of the loan remain constant once payments started or that variable payments could not be covered under the Act.

> (A) simple but fundamental rule of administrative law * * * is * * * that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action * * *.

*Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168–69, 83 S. Ct. 239, 246, 9 L. Ed. 2d 207 (1962).

Even if a *post hoc* determination was appropriate, which it is not, the SBA failed to articulate the basis for its determination that the loan was never eligible for inclusion in the CARES Act program other than to reference the entire history of the loan.  Such determination is not permitted, was not articulated within the Administrative Record, and could not be considered anything other than arbitrary

21

and capricious when considered under the law and regulations that apply.  The

decision of the lower court must be reversed.

**(3)     Plaintiff Was Not Afforded Adequate Due Process**

The lower court erred when it determined that the SBA did not violate the

due process rights of PSI in connection with its decisions related to the CARES

Act payments. While the lower court stated that "the plaintiff has gotten adequate

due process," (JA404) the only basis provided by the court was the fact that a

representative of PSI was present to observe the argument on summary judgment

in 2024. JA404. This appearance occurred fifty-two (52) months AFTER the SBA

deprived PSI of its rights under the CARES Act ($3,914,303.23, the amount due as

of June 1, 2020) and long after PSI faced default, liquidation and refinancing as a

result of that lack of due process. The lower court further dismissed the failure of

the SBA to provide notification of its decision related to the Form 95 claim as

required pursuant to 13 C.F.R. § 114.109 as harmless error . JA404.

From the time of the SBA's failure to make the June 2020 payments until

receipt of the May 2021 memo and beyond, the SBA wrongfully deprived PSI of

their vested "property interest," i.e., the loan subsidy payments, first by stopping

payments without notice and explanation and then by failing to provide any type of

response, let alone a coherent explanation, for the better part of a year to the

multiple and repeated inquiries of both PSI and the lender.  PSI never had a

conversation with the SBA, let alone a "hearing" of any sort to address or rebut the undocumented allegations that the loan was in default. The SBA had no interest in determining where or how the error in stopping payments had occurred and whether or not payments should be restarted.

In *Hamdi v. Rumsfeld*, 542 U.S. 507 (2004), the United States Supreme Court described the "essential constitutional promises" of due process required by the Fifth Amendment before the federal government can deprive a person of life, liberty, or property, as "notice and an opportunity to be heard . . . at a meaningful time and in a meaningful manner." 542 U.S. at 533. The SBA breached, and continues to breach, its duty to provide PSI with "notice and an opportunity to be heard . . . at a meaningful time and in a meaningful manner," which has caused continuing damages to PSI in excess of $3,914,303.23, the amount due for the third through sixth payments under the CARES Act.

Although the SBA and the lower court determined that any violation of due process was harmless error (JA404), that assessment is also incorrect and not borne out by the facts of the case. Had the SBA initially afforded PSI a modicum of due process by reaching out to either the lender or PSI in June of 2020 prior to stopping payments or concurrent with the pause in payments or even in May of 2021, to clarify the situation, the SBA would have been advised either that there was no delinquency or a delinquency was misreported while awaiting the first government payment.

23

As discussed in depth *supra*, there was no evidence in the Administrative Records as of June 2020 or even as late as May 7, 2021, that the loan was considered "delinquent" or in "default". Further, per the terms of the CARES Act, PSI could have established continued eligibility for the loan by citing to the regulation that required the loan to be in regular servicing "prior" to the due date of the first payment by the SBA. JA146. The first payment undertaken by the SBA was for the April 2020 payment. There is no evidence that the loan was in default *prior* to April of 2020, nor has the SBA ever claimed that the loan was in default *prior* to the due date for the April payment, the first payment assumed by the SBA.

At no point prior to filing suit against the SBA, despite extended and varied efforts by PSI, was PSI permitted any opportunity to interact with the SBA to understand the basis for the actions of the SBA or to disabuse the SBA of faulty conclusions related to the status of the loan all to the significant injury of PSI.

Had the SBA not violated PSI's due process, PSI would have been aware of the perceived issue concurrent with the event, addressed it with the SBA and avoided the multi-year odyssey to secure an answer from the SBA, including the underlying lawsuit and this appeal. The decision of the lower court was inconsistent with the due process rights afforded PSI under the Fifth Amendment and the facts of this case, and the decision must be reversed.

**(4)     Whether the District Court Decision, Assuming *Arguendo* It Was Not "Arbitrary And Capricious" Based on the Issues Above, Was as a Matter Of Statutory Interpretation, "Not In Accordance With Law," 5 U.S.C. § 706(2)(A), *I.E.*, Not In Accordance With Congress' Intent In Enacting Section 1112 of The CARES Act.**

During oral argument of the cross motions for summary judgment, the lower court observed that under "the CARES Act, it was quite clear that if the loan was not performing appropriately, that SBA was not required, . . . to make the payments" JA403.  This statement signaled an embrace of the SBA's post-hoc position that the PSI loan was a "bad loan" and was never eligible for inclusion in the CARES Act, thereby justifying the June 2020 halt to payments.  Assuming *arguendo* that this post-hoc decision that the loan was never eligible for inclusion in the program was not arbitrary and capricious and was in fact, a permitted basis for an agencies decision, the lower court erred in determining that this decision was in accordance with the law and the Congressional intent in enacting Section 1112 of the CARES Act.

The requirements for a loan's acceptance into the CARES Act were that it be a "covered loan" in "regular servicing status" (Section 1112(c)(12), which PSI's loan at issue indisputably was.  In passing this statute, Congress determined that all borrowers are adversely affected by COVID 19 and that "relief payments by the Administration are appropriate for all borrowers." Section 1112(b).

Notwithstanding this clear indication of Congressional intent, the SBA argues that Plaintiff's loan had never in fact been eligible for CARES Act payments. JA360-361. By accepting this post-hoc rationalization, the lower court erred in confirming that this decision was in accordance with the law despite the fact that the SBA was unable to point to any discussion within the record of how the servicing history removed this loan from eligibility for inclusion in the program.

The SBA posits and the lower court accepted, that because the loan had undergone multiple modifications and that the principle had not been paid down during the initial or extended term of the loan, the SBA's actions related to this loan are justified under the APA. JA403-404. However, Section 1112(b) of the CARES Act was considered to provide relief for "all borrowers", not just those with pristine servicing records.

Further, none of the actions taken to amend or modify the loan repayment terms or waiver of incidents of default were identified to be in violation of the terms of the lending agreement – a lending agreement authorized and approved by the SBA. Even though the lender could have had immediate access to that information prior to accepting a loan into the program, there was nothing within Section 1112 of the CARES Act that required anything other than the loan be in "regular servicing status." 15 C.F.R. § 9011(c)(1)(A)i).

26

Although the SBA advised Atlantic Bank that their servicing was found to be in violation of one or more of the many, nonspecific bases identified within 13 C.F.R. § 120.524(a)(1-5)(JA360) it is anything but clear what specifically the lender did, or failed to do, what specific set of circumstances they should have responded to and at what point in time this failure to act occurred. Defendant references the full history of this loan back to its date of inception but fails to pinpoint the time, place, and manner where the lender's servicing diverted from "commercially reasonable," "prudent lending standards" or how it violated the Loan Program Requirements. JA360. Clearly the standards as applied to the lender provided for subjective decision making based on the circumstances of individual borrowers and loans. If the SBA required the lender to undertake specific acts when faced with specific situations, it would have spelled out with significant clarity within the regulations and Standard Operating Procedures to which the 7(a) lenders were held, precisely how lenders were to act. The Defendants have simply failed to identify with any specificity how the loan did not qualify for CARES Act subsidies nor does the Administrative Record provide any clarity on the issue, either before the May 2020 decision or subsequently, yet the lower court accepted this post-hoc pronouncement as fact and as a basis for denial of payments.

Under the recently adopted standard in *Loper*, it is the obligation of this Court to strictly evaluate the leap-of-faith, post-hoc conclusions put forth by the

SBA to justify its decision that the PSI loan never qualified for CARES Act subsidies. Specifically, the SBA maintains that the lender failed to service the loan in a "commercially reasonable manner, consistent with prudent lending standards, and in accordance with Loan Program Requirements." 13 C.F.R. § 120.535(a). There is nothing in the Administrative Record to support this conclusion, only the loan documents themselves that contain the underlying facts but reveal nothing about any deliberative process undertaken by the SBA.

It is unknown from the Administrative Record if the SBA itself ever pinpointed exactly when the lender purportedly deviated from "commercially reasonable," "prudent lending standards" or perhaps violated the Loan Program Requirements in connection with any of the amendments or other servicing actions. The Administrative Record is devoid of any analysis of the loan history; it contains only the post-hoc conclusion that those norms were violated. See specifically the November 10, 2022 SBA letter to Atlantic Union Bank wherein the SBA provided a recitation of the full history of the loan and indicated that "such action would constitute a violation of 13 C.F.R. § 120.524(a)(1-5)." JA360-361.[3] The SBA could have and in fact, was required to, identify the specific point in time when the lender violated 13 C.F.R. § 120.524(a) and further identify which of the

_____

[3] *N.b.*, this November 10, 2022 letter is the ONLY reference in the Administrative Record concerning any conclusion by the SBA that the loan was never eligible for CARES Act subsidies.

28

subparts (1-5) was specifically involved.  Without such clarity within the

Administrative Record, this Court cannot accept that the actions of the SBA were

within the bounds of the statutes and regulations governing the CARES Act

program and therefore its decision in favor of the SBA amounted to a post-hoc

SBA-constructed and then judicially adopted "bad loan" exception to Section 1112

of the CARES Act, was in error, and must be reversed.

## CONCLUSION

The SBA failed to establish any basis that was not arbitrary and capricious

for its decision, both in June of 2020 and later in late 2022, for its decision to stop

loan subsidy payments to PSI under the CARES Act.  The court below relied on

unsupported and at times, incorrect facts to deny PSI's motion for summary

judgment.  For the reasons set forth above, the decision of the lower court was

contrary to both the applicable law and the facts as they exist within the

Administrative Record and the Fifth Amendment, and should be reversed.

## REQUEST FOR ORAL ARGUMENT

Appellant PSI respectfully requests oral argument on the

issues presented above. Oral argument will allow for the clear presentation of the

extended factual basis resulting in the claims presented.

December 23, 2024                        Respectfully Submitted,

29

*Milton C. Johns*
Milton C. Johns
EXECUTIVE LAW PARTNERS, PLLC
11130 Fairfax Blvd, Suite 303
Fairfax, VA 22030
P: 571 500 1010
F: 571 408 8104
mjohns@xlppllc.com

*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

1.  This document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

this document contains <u>7,088 words</u>.

2.  This document complies with the typeface requirements because:

This document has been prepared in a proportional spaced typeface using <u>Microsoft Word</u> in <u>14-point Times New Roman</u>.

<u>Milton C. Johns</u>
Milton C. Johns
EXECUTIVE LAW PARTNERS, PLLC
11130 Fairfax Blvd, Suite 303
Fairfax, VA 22030
P: 571 500 1010
F: 571 408 8104
mjohns@xlppllc.com

*Counsel for Appellant*

31