# NO. 24-2082

In The

# United States Court Of Appeals
## For The Fourth Circuit

## PACEM SOLUTIONS INTERNATIONAL, LLC,

*Plaintiff - Appellant,*

v.

## U. S. SMALL BUSINESS ADMINISTRATION; EVERETT WOODEL, JR., Acting Administrator of the Small Business Administration,

*Defendants - Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT ALEXANDRIA

———————

## REPLY BRIEF OF APPELLANT

———————

**Milton C. Johns**
**EXECUTIVE LAW PARTNERS PLLC**
**11130 Fairfax Boulevard**
**Suite 303**
**Fairfax, VA 22030**
**(571) 500-1010**
**mjohns@xlppllc.com**

*Counsel for Appellant*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................... ii

SUMMARY OF ARGUMENT ........................................................3

STANDARD OF REVIEW .............................................................4

ARGUMENT ..................................................................................6

1.   The Administrative Record Does Not Contain the Requisite
     "Satisfactory Explanation For The Actions Of The SBA, Including A
     'Rational Connection Between The Facts Found And The Choice
     Made'" ................................................................................6

2.   The Administrative Procedure Act Does Not Permit *Post Hoc*
     Rationalization to Support Agency Action ......................................8

3.   Plaintiff Was Not Afforded Adequate Due Process .......................12

4.   Decision of the SBA Was Not In Accordance with Congress' Intent
     In Enacting Section 1112 of the CARES Act ................................16

CONCLUSION ..............................................................................22

REQUEST FOR ORAL ARGUMENT..................................................22

CERTIFICATE OF COMPLIANCE ...................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Labs. v. Gardner*,
  387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) .....................................8

*AK Futures, LLC v. Boyd Street Distro, LLC*,
  35 F.4th 682 (9th Cir. 2022) .........................................................................17

*Almy v. Sebelius*,
  679 F. 3d 297 (4th Cir. 2012) .......................................................................19

*Anderson v. Diamondback Inv. Grp. LLC*,
  117 F.4th 165 (4th Cir. 2024) .......................................................................17

*Auer v. Robbins*,
  519 U.S. 452 (1997).......................................................................................20

*Barnhart v. Sigmon Coal Co., Inc.*,
  534 U.S. 438, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002) .................................19

*Bennett v. Spear*,
  520 U.S. 154 (1997).....................................................................................8, 9

*Bond v. United States*,
  572 U.S. 844, 134 S.Ct. 2077, 189 L.Ed.2d 1 (2014) ...................................19

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
  467 U.S. 837 (1984)....................................................................................5, 16

*Country Vintner of N.C., LLC v. E. & J. Gallo Winery, Inc.*,
  718 F.3d 249 (4th Cir. 2013) .........................................................................18

*Dep't of Homeland Sec. v. Regents of the Univ. of California*,
  140 S. Ct. 1891, 207 L. Ed. 2d 353 (2020)....................................................10

*FTC v. Standard Oil Co. of California*,
  449 U.S. 232 (1980)..........................................................................................8

*Groff v. DeJoy*,
  600 U.S. 447, 143 S.Ct. 2279, 216 L.Ed.2d 1041 (2023) ............................18

*HollyFrontier Cheyenne Refining, LLC v. Renewable Fuels Ass'n*,
  594 U.S. 382, 141 S.Ct. 2172, 210 L.Ed.2d 547 (2021) ..............................19

*King v. Burwell*,
  576 U.S. 473, 135 S.Ct. 2480, 192 L.Ed.2d 483 (2015) ..............................18

*Loper Bright Enterprises v. Raimondo*,
  144 S. Ct. 2244 (2024) .....................................................4, 5, 16, 17, 18, 19

*Motor Vehicles Mfgs. Ass'n v. State Farm Mutual Auto Ins. Co.*,
  463 U.S. 29 (1983) ...................................................................................1, 12

*Ohio Valley Envtl. Coal., Inc. v. Aracoma Coal Co.*,
  *556 F. 3d 177* (4th Cir. 2009) .......................................................................20

*Othi v. Holder*,
  734 F.3d 259 (4th Cir. 2013) .........................................................................18

*Pharm. Coal. for Patient Access v. United States*,
  No. 24-1230, 2025 WL 271562 (4th Cir. Jan. 23, 2025) .......................18, 19

*Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army
Corps of Eng'rs*,
  87 F.3d 1242 (11th Cir. 1996) .........................................................................7

*Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*,
  324 F.3d 726 (D.C. Cir. 2003) .........................................................................8

*Role Models Am., Inc. v. White*,
  317 F.3d 327 (D.C.Cir.2003) ...........................................................................8

*Sanitary Bd. of City of Charleston, W. Virginia v. Wheeler*,
  918 F.3d 324 (4th Cir. 2019) .........................................................................11

*Stokes v. Stirling*,
    64 F.4th 131 (4th Cir. 2023), cert. denied, 144 S. Ct. 377,
    217 L. Ed. 2d 203 (2023) ................................................................ 1

*United States v. Boler*,
    115 F.4th 316 (4th Cir. 2024) ...................................................... 18

**Statutes**

5 U.S.C. § 706(2)(a) ......................................................................... 2, 21

5 U.S.C. § 706(2)(A) ............................................................................. 3

2018 Farm Act ................................................................................... 17

7 U.S. Code § 1639o ......................................................................... 17

Administrative Procedure Act (APA) .................................................. 8

CARES Act ......................................................... 3, 4, 5, 6, 14, 21, 22

CARES Act § 1112 ................................... 2, 3, 5, 14, 16, 21, 22

Freedom of Information Act (FOIA) ............................................ 12, 13

**Constitutional Provisions**

U.S. Const. amend. V ........................................................................ 22

**Rules and Regulations**

123 C.F.R. §114.109 .......................................................................... 14

This appeal presented four legal issues, only one of which the SBA addressed in its Appellee Brief.  The SBA has thus waived the following three legal issues, any one of which is dispositive of this appeal, warranting reversal and remand with directions for the District Court to rule in favor of PACEM Solutions International Inc.' ("PSI"). "It is well-established that '[a] party's failure to raise or discuss an issue in [its appellate] brief is to be deemed an abandonment of that issue.'  'Even appellees waive arguments by failing to brief them'." *Stokes v. Stirling*, 64 F.4th 131, 137 (4th Cir. 2023) (bracketed text in original; internal citations omitted), cert. denied, 144 S. Ct. 377, 217 L. Ed. 2d 203 (2023).

These are the three legal issues on appeal that the SBA has waived:

 Issue 1: Whether the District Court erred in its decision to grant Defendants' Motion for Summary Judgment while denying PSI's Cross-motion for Summary Judgment based on the undisputed fact that the SBA Administrative Record before the District Court did not include the requisite "satisfactory explanation for its actions, including a 'rational connection between the facts found and the choice made'." *Motor Vehicles Mfgs. Ass'n v. State Farm Mutual Auto Ins. Co*., 463 U.S. 29, 43 (1983).

In its Appellee Brief, regardless of how many times the SBA claims that it relied on a May 2020 1502 report as the basis for its first decision to stop

1

payments, there simply is no evidence in the Administrative Record that there was

a 1502 report available, let alone considered, by the SBA at that time.  Neither the

District Court below nor this Court, relying on the Administrative Record as the

sole and only permitted source of evidence, can find a "rational connection

between the facts found and the choice made" (*Id*.) and therefore, this Court should

reverse the decision of the lower court.

Issue 2: Whether the District Court erred as a matter of law in holding,

without any further explanation, that "the plaintiff has gotten adequate due

process." JA409. (Identified as Issue 3 in the Appellant Brief).

As explained in this Reply, due process and the right to a hearing are neither

satisfied by the right to file a claim against the government nor is due process

satisfied by filing a claim challenging the basis of one decision, only to ultimately

be denied on the basis of a completely different decision for which PSI had no

opportunity to respond.

Issue 3: Whether the District Court decision, assuming arguendo it was not

"arbitrary and capricious" based on the issues above, was as a matter of statutory

interpretation, "not in accordance with law," 5 U.S.C. § 706(2)(a), i.e., not in

accordance with Congress' intent in enacting section 1112 of the CARES Act.

As explained in this Reply, the Administrative Record was devoid of any

evidence upon which the District Court could determine that the actions of the

SBA were not "arbitrary and capricious." and equally provides no basis for this Court to sustain the findings of the District Court.

This is the 4th issue presented, identified as Issue 2 in the Appellant Brief, on which the SBA is wrong as a matter of law, as explained in this Reply:

> Whether the District Court erred in relying on a *post hoc rationalization* put forward by Counsel for Defendants in the District Court for the first time based on documentation not available to the SBA at the time of the SBA's original June 2020 decision to stop payments to determine that the actions of the SBA were not "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

## SUMMARY OF ARGUMENT

The SBA premises its entire argument on a melodramatic rendition of the undisputed factual life of this loan to justify its unexplained, unsupported, and legally improper stoppage of loan payments on behalf of PACEM Solutions International, LLC ("PSI") pursuant to the CARES Act in June of 2020. The argument is short on authority and long on hand-wringing and mud-slinging against PSI related to the history of the PSI loan, none of which played any role in the June 2020 decision by the SBA to stop loan payments on behalf of PSI under Section 1112 of the CARES Act.  Because of this reliance, ultimately the District Court erred as a matter of law in giving the SBA a pass in the SBA's failure  to meet its legal obligation of establishing a basis for its decision that is (a) not based on post-hoc rationalization and (b) otherwise "arbitrary and capricious".

Of course, in order to understand the law, you need to know the facts. Here are the undisputed material facts that warrant reversal of the District Court ruling as a matter of law.

When Congress enacted the CARES Act, PSI had an SBA loan, the default of which its lender had just waived. JA60 Subsequent to enactment of the CARES Act, PSI's lender advised PSI not to worry about the April 2020 payment because the SBA would be paying it as a subsidy pursuant to the CARES Act. JA418 The SBA then paid the subsidy payments for April and May of 2020, but ceased making subsidy payments without explanation in June 2020. JA46, JA124 Notwithstanding diligent efforts by both PSA and its lender to ascertain why the SBA had stopped subsidy payment in June 2020, including PSI filing an administrative "Form 95" claim for the final four of six subsidy payments due under the CARES Act. JA179 The SBA did not explain why it had stopped subsidy payments in June 2020 until December of 2022, (JA382-383) and that explanation was in violation of the SBA's own regulations, and did not address any of the issues raised in PSI's Form 95 claim.

## STANDARD OF REVIEW

The parties do not agree on the appropriate standard of review for this matter. The standard articulated by the SBA, relying solely on pre-*Loper Bright* case law, permits the SBA to justify their legislation of a "Bad Loan" Exception to

Section 1112 of the Cares Act that was ultimately revealed as the basis for the determination that the PSI loan was never eligible for inclusion in the CARES Act program. This is an exception not articulated within the statutory language of the CARES Act and which is not within the sole discretion of the Agency to create.

PSI has presented on appeal a case of first impression under the CARES Act involving what the 4th Circuit recently called "ambiguities in statutory directives to agencies," which squarely implicates the Supreme Court's recent reversal of *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), in *Loper Bright Enterprises v. Raimondo,* 144 S. Ct. 2244 (2024*)*.

The SBA brief discards any consideration of *Loper*, arguing that PSI has misread that decision which, according to the SBA, "abrogated only a specific form of deference to binding agency interpretations of ambiguous statutory language, i.e. , *Chevron* deference. *See* Resp. Br. 25, FN10 citing ECF No. 41 at 4-6. The SBA has failed to detail how the actions taken by the SBA do not involve "agency interpretations of ambiguous statutory language." PSI argues that that is exactly what was done in this case. The SBA took the language of the statute – specifically the requirements that a loan be in "regular servicing" and despite that term being defined, expanded the scope of that term well beyond the definition. That is precisely the type of agency action that *Loper Bright* determined was appropriate for non-deferential APA review by federal courts. The District Court

deferred to the SBA's interpretation of the CARES Act, essentially writing into the statute a "bad loan" exception, and should be reversed for this legal error alone.

The District Court should also be reversed for the other legal errors summarized below.

## ARGUMENT

1. **The Administrative Record Does Not Contain the Requisite "Satisfactory Explanation For The Actions Of The SBA, Including A 'Rational Connection Between The Facts Found And The Choice Made'"**

From the time of the initial receipt of the Administrative Record on May 31, 2024, PSI has been struck by the absence of any documentation that could have been used by the SBA to support the decision to stop payments in June of 2020 as communicated to the lender in the September 1, 2020 email. JA37. Specifically, neither the May 1502 Report, nor any 1502 for that matter, nor any contemporaneous documentation about the decision to stop the payments was contained within the Administrative Record.

There is a "history report" of 1502 reports (JA35) printed no earlier than June 3, 2021 included in the Administrative Record but that does not resolve the central issue.  On what did the SBA base its decision, as reported in the September 1, 2020 email, to stop the loan payments on behalf of PSI on or around June 1, 2020? JA37. The SBA dismisses this argument claiming that PSI just does not understand that the Administrative Record is not compiled in "real time."  Relying

6

on *Preserve Endangered  Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs,* 87 F.3d 1242, 1246 n.2 (11th Cir. 1996), the SBA indicates that the agency will compile and organize the complete administrative record for all the files of agency staff involved in the agency action. Resp. Br. 34.  "There is, of course, nothing wrong with an agency compiling and organizing the complete administrative record after litigation has begun from all the files of agency staff involved in the agency action, as long as that record only contains documents considered by the staff prior to the agency action. *Pres. Endangered Areas*, 87 F.3d at 1247.

PSI has no objection to the file being physically compiled after the fact. PSI's objection is that even after all the documents are collected, there is not a single document in the Administrative Record that would have been in the hands of any of the individuals involved at the time of the June 2020 decision to stop payments that would have provided the basis for that decision.

Collecting parts of a record from various custodians after the fact is fine. Relying on documents that were available contemporaneous with the decision is appropriate. Pretending that there was a basis for the decision when there are no contemporaneous documents supporting that decision (in fact, none of the documents date back to June 2020) is reversable "arbitrary and capricious" agency action.

2.     **The Administrative Procedure Act Does Not Permit *Post Hoc* Rationalization to Support Agency Action**

The SBA argues that there can be no *post-hoc* decision as long as the "final decision" prior to litigation is the same decision that is argued in court. To support its position, the SBA identifies the December 2022 decision regarding PSI's lender as the "final decision" and argues that its June 2020 decision was not final.

> An agency action is deemed final if it is " definitive " and has a " direct and immediate ... effect on the day-to-day business" of the party challenging the agency action. *Standard Oil,* 449 U.S. at 239, 101 S.Ct. at 493 (quoting *Abbott Labs. v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)). . . . Agency action is considered final to the extent that it imposes an obligation, denies a right, or fixes some legal relationship. *Role Models Am., Inc. v. White,* 317 F.3d 327, 331-32 (D.C.Cir.2003).

*Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n,* 324 F.3d 726, 731 (D.C. Cir. 2003); *see Bennett v. Spear*, 520 U.S. 154, 177–78, (1997).

By that definition, the June 2020 decision was "final." The SBA simply stopped payments. Based on the lender's follow-up communications and the response of the SBA, it is clear that absent follow up from Atlantic Bank, the SBA had no plans to take any further action on what they considered a closed matter. The decision had a "direct and immediate . . .  effect on the day-to-day business" of PSI, the ramifications of which are felt to this day.

This final decision was ultimately communicated to the lender through a September 1, 2020 email responding to the lender's desperate attempts to contact

someone at the SBA.  By the time of that communication, the SBA should have already paid the remaining four of six loan payments but the lender was instead told that there was nothing that could be done by the SBA to change the situation. JA37. The basis for that decision, that the loan was delinquent in May of 2020 was later echoed in the response to the Ombudsman inquiry in May of 2021, essentially a year after the fact. JA166-168.

There was a second decision, also a final decision, that was communicated to PSI in December 2022 purportedly in response to the Form 95 administrative claim. JA382-383. That decision was the result  of the SBA's evaluation of the actions of the lender and was unrelated to the initial determination that the loan was identified as "delinquent" in May of 2020. The SBA concluded that the loan was never eligible for inclusion in the loan program because of servicing irregularities. There was no discussion in the SBA notice to the bank that the loan was "delinquent" in May of 2020. *Id*.

The SBA conveniently categorizes the June 2020 decision as preliminary or "not-final" to avoid a *post hoc* argument related to the change in the basis for the decision in December 2022. There were two decisions.  The SBA prefers to ignore the initial decision and did not, in fact, raise it with the bank when the lender was advised that no further payments would be forthcoming.

It is a "foundational principle of administrative law" that judicial review of agency action is limited to "the grounds that the agency invoked when it took the action." *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1907–08, 207 L. Ed. 2d 353 (2020). The SBA stopped payments in June of 2020.  To now claim that a decision made in November of 2021, based on information that was unknown to the SBA in June of 2020, is not a *post-hoc* basis is wrong as a matter of law.  The SBA did not enhance or strengthen the original explanation; it flat out discarded it and replaced it with one that, by its own admission, could not have been known in June of 2020.

The SBA would have this Court ignore the undisputable fact that the Administrative Record contains no contemporaneous explanation of why the SBA stopped the payments in June of 2020.  The decision that the SBA wants this Court to accept - which is based on a completely different rationale – was made well after the fact and apparently because the SBA had to find an alternate reason for the stoppage as the initial basis did not hold up under the pertinent regulations.

Despite the SBA's insistence, the factual question before the District Court was whether the loan was in default in May of 2020.  That is the reported reason for the payment stoppage, and that is the reason the SBA abandoned nearly two years later when it realized it had to justify its earlier decision and could not do so by reliance on the administrative record. The SBA argues that "even if May 2020

10

stoppage were a reviewable FINAL ACTION, the SBA adequately grounded it in

the apparent delinquency on the face of Atlantic's 1502 report that month." Resp.

Br. 32.  Again, there was nothing in the record to indicate that a1502 report was

available to the SBA personnel at the time they made the decision to stop payments

in May of 2020. The SBA continues to argue that "this Court has been clear that

the administrative record need only "contain[] the *information* [the agency] should

have considered and reflect[] the decisional process that it followed." *Sanitary Bd.*

*of City of Charleston, W. Virginia v. Wheeler*, 918 F.3d 324, 334 (4th Cir. 2019)

(emphasis added). Resp. Br. 33. This statement is a perversion of the actual

holding.  *Sanitary Board* found that "[t]here is a presumption that the record

compiled by the agency is the record on which it rested its decision. *Sanitary Bd. of*

*City of Charleston, W. Virginia v. Wheeler*, 918 F.3d 324, 334 (4th Cir. 2019).  The

statement regarding what "should" be contained within the record is not to state

that it can contain "what should have been" considered, rather that it *only* contains

what is considered and is not to be supplemented after the fact.  The presence of a

document created in June of 2021 cannot provide support for a decision made in

June of 2020. The fact remains that there is no evidence in the record that the SBA

had access to, reviewed or relied on that 1502 report in stopping the payments.

     If the SBA properly stopped payments in June of 2020 because of a default

situation, that would have been the decision communicated to PACEM in response

to PSI's Form 95 administrative claim. The SBA's change in the basis for its decision only served to raise additional questions and foster litigation on this point.

**3.    Plaintiff Was Not Afforded Adequate Due Process**

Despite the assurances of the SBA to this Court, PSI was not afforded due process by the SBA over the nearly two and a half years between the time the payments were stopped and the filing of the complaint in the Eastern District of Virginia.  During this entire time, PSI was chasing a moving target making it impossible to give any due process.

The SBA derided PSI for its assertion that it "never had a conversation with the SBA" in relation to the denial and the changing reasons for the same and argued that PSI mischaracterized their interactions with the SBA. Unfortunately, the SBA conflates the right to submit a FOIA request or a letter to the Ombudsman or file a Form 95 Claim with meaningful interactions. These were all one-sided events with, at best, a belated and uninformative response from the recipient.

The fact is the loan payments were stopped in June of 2020.  The SBA failed to communicate this fact to the lender, leaving both the lender and PSI to pursue information from the bank, finally forthcoming several months later in the form of an equivocal pseudo explanation. JA37.

PSI attempted to exercise its due process rights by contacting the lender, (JA325-326) contacting the SBA ombudsman (JA169), filing FOIA requests for

12

documents related to the loan (JA327, JA346, JA337-338), and finally, when those efforts provided no information, filing a Form 95 administrative t claim (JA179). During this time, there was little to no oral communication with the SBA with communications accomplished via email.

The December 2020 inquiry to the ombudsman was not answered until May 19, 2021. JA166-168. That letter confirmed that it was understood that the loan was in default since reported delinquent in May of 2020. The internal SBA memo produced by the ombudsman explained that once the borrower had been reported by the lender to be in default, the Borrower ceased to be in regular servicing status and was therefore ineligible for further payment. But the lender denied that it ever reported such a default. JA419.

FOIA requests by PSI followed in an attempt to secure documentation from the SBA that would have supported the "finding" that the loan was delinquent as the SBA was responsible for loan payments as of April 2020 so any "late payments" would have been their responsibility. The FOIA efforts ended in a brick wall when the SBA responded that it could not release the requested records pending the closing of an investigation. JA341-345.

Having reached another dead end, PSI filed a Form 95 administrative claim on June 28, 2022. JA179-188. PSI based its administrative claim and supporting information on the assertion by the SBA that the loan had been misreported as

13

delinquent in May of 2020. It was (and still is) PSI's position that the loan was not delinquent at that time, and that payments should resume. JA179-188. While it is true that a series of emails were exchanged between the counsel for PSI and the SBA from September 2022 through early 2023, a reading of those emails reveals there was no substantive "interfacing" on any issues that related to the pending Agency decision. JA377-393.

It was not until late December 2022 that SBA counsel advised counsel for PSI that it was now determined that the loan was never eligible for inclusion in the program. This communication was via an email to PSI counsel simply stating that "After reviewing all of the documents submitted by PACEM, reviewing the loan itself and communicating with the lender, Atlantic Union Bank, SBA determined that PACEM is ineligible to receive Section 1112 payments under the CARES Act given, among other things, PACEM's loan and payment history." JA360-361. Even assuming arguendo that an email notification to counsel was sufficient to satisfy the delivery of the notification under 123 C.F.R. §114.109, that email provided no information to PACEM as to the reason for the denial other than a generalized statement. PACEM now knows through a review of the Administrative Records that the SBA apparently identified to PSI's lender specific statutes that it maintains were violated in the servicing of this loan, but failed to provide any substantive information to PACEM. JA360-361. SBA argued that even if the email violated the

14

Code, PSI could demonstrate no prejudice from this omission. That is not true as a matter of law based on the administrative record.

PACEM pushed for more than two years to get an answer from the SBA as to the basis for their position that the loan was delinquent in May of 2020. After that time, all PSI received was a generalized statement that the loan was determined to be ineligible based on the loan and the history. JA382-383. Not only did the SBA violate the service requirement for this notice, but it also failed to provide the actual basis for the denial – i.e., the code provision that was purportedly violated – leaving PSI only with some general language indicating that the loan servicing was bad. The SBA did not meet the moment and in fact, fell woefully short. PSI even attempted to secure documentation from the SBA subsequent to receipt of that email in an effort to better understand the basis for that decision (this was a large part of the communications between PSI counsel and SBA counsel referenced in the SBA's brief that they claim was substantive due process) but was repeatedly rebuffed. JA377-382. PSI was left with no option but to file suit to, at a minimum, learn the actual legal basis that the SBA relied to deny the loan payments.

The fact that a party can submit information and send emails to the ombudsman does not rise to the level of "due process," and the administrative record establishes that there was no real opportunity to be heard -- the only result

15

of those communications was delayed and generalized communications. Further, the administrative record establishes that PSI's rights to notice and opportunity to be heard were further violated  in May of 2021 and in December of 2022 when its administrative claim was denied by email – in admitted violation of the SBA's own procedural rules – and without an adequate explanation in violation of Supreme Court APA caselaw. PSI was left without any avenue to legitimately review this matter until suit was filed.  That is not due process.

**4.    Decision of the SBA Was Not In Accordance with Congress' Intent In Enacting Section 1112 of the CARES Act.**

The SBA refers this Court to its Reply Memorandum for Summary Judgment below (ECF. No. 41 at 4-6) where the SBA argued that "Loper Bright is clear about the sort of deference in its sights: whether a court must 'defer to 'permissible' agency interpretations of the statutes those agencies administer.''" 144 S. Ct at 2254. ECF. No. 41 at 4-6.  The SBA continues "In Loper Bright, the Supreme Court held that such deference on a question of law cannot be squared with the APA, which requires 'that courts decide legal questions by applying their own judgment,'" *Loper* at 2261,ECF. 41 at 5.  The SBA argued below that in overruling *Chevron*, the court "abolish[ed] its deference to agency readings of ambiguous statutes." *Id* at 2273, ECF. 41 at 5.

The basis of the SBA's decision that the loan was no longer eligible was not a determination of fact- none of the material facts are in dispute but an

interpretation of an ambiguous statute that was silent on the elements that the SBA now claims mandate that the loan was "not eligible." There is nothing in the statute that identifies the amount of principal that a loan can have to be eligible, there is nothing that identifies the total amount that the government can assume, there is nothing in the statute that indicates that a loan modification before or during the period of SBA responsibility renders the loan ineligible. All of these conclusions were based on the SBA's interpretation of a statute that was silent on those points. Those are exactly what *Loper* envisioned being reviewed by federal courts. Since *Loper*, the 4th Circuit has explained this new standard of review at least twice:

In *Anderson v. Diamondback Investment Group, LLC*, the 4th Circuit ruled on a matter involving "interpretation of the 2018 Farm Act", specifically the definition of "hemp" as defined in the relevant statute. The court held that,

> we're free to make that determination ourselves, despite a contrary interpretation from the DEA, because we agree with the Ninth Circuit that § 1639o is unambiguous, *see AK Futures*, 35 F.4th at 692, and because, even if it were ambiguous, we needn't defer to the agency's interpretation, *see Loper Bright Enters. v. Raimondo*, –––– U.S. ––––, 144 S. Ct. 2244, 2262, 219 L.Ed.2d 832 (2024) ("The APA, in short, incorporates the traditional understanding of the judicial function, under which courts must exercise independent judgment in determining *188 the meaning of statutory provisions.").

*Anderson v. Diamondback Inv. Grp*., LLC, 117 F.4th 165, 187–88 (4th Cir. 2024)

17

The actions of the SBA in deciding the eligibility of PSI for the loan program involved the same type of "interpretation" of the statute, specifically an enlargement of the "regular servicing" requirement. The decision to expand that definition, which is what the SBA did in this matter, is precisely the type of decision that Loper confines within non-deferential judicial review.

In *Loper Bright*, the Court rejected the long-standing notion that "ambiguities" in statutory language act as "implicit delegations to agencies." *United States v. Boler,* 115 F.4th 316, 322 (4th Cir. 2024) citing *Loper Bright, 144* S. Ct. at 2265.

While the SBA argued below that the *Loper* decision is not controlling or applicable in the current matter before this District Court, the reasoning presented is contrary to the *Loper* decision as discussed *supra*. While a recent decision of this Court in *Pharm. Coal. for Patient Access v. United States*, No. 24-1230, 2025 WL 271562 (4th Cir. Jan. 23, 2025) considered the interpretation of statutes without invoking the *Loper* decision, the reasoning in *Pharm Coal* is not supportive of the position asserted by the SBA.

> Statutory interpretation begins with the text of the statute. *Groff v. DeJoy*, 600 U.S. 447, 468, 143 S.Ct. 2279, 216 L.Ed.2d 1041 (2023); *Othi v. Holder*, 734 F.3d 259, 265 (4th Cir. 2013). To determine a statute's plain meaning, this court looks not only to the statute's language, but also to the context in which that language appears, and the broader context of the statute as a whole. *King v. Burwell*, 576 U.S. 473, 486, 135 S.Ct. 2480, 192 L.Ed.2d 483 (2015); *Country Vintner of N.C., LLC v. E. & J. Gallo Winery, Inc.*, 718 F.3d 249, 258

18

(4th Cir. 2013). This court generally gives undefined terms their ordinary or natural meanings. *HollyFrontier Cheyenne Refining, LLC v. Renewable Fuels Ass'n*, 594 U.S. 382, 388, 141 S.Ct. 2172, 210 L.Ed.2d 547 (2021). If statutory language is ambiguous, this court may turn to other sources of meaning such as canons of construction or background principles of law to determine meaning. *Bond v. United States*, 572 U.S. 844, 859–60, 134 S.Ct. 2077, 189 L.Ed.2d 1 (2014); *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 461–62, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002).

*Pharm. Coal. for Patient Access v. United States*, No. 24-1230, 2025 WL 271562, at *3 (4th Cir. Jan. 23, 2025).

The Pharm Coal court agrees that the assessment of the appropriateness of an agency's interpretation of its statutes is within the realm of the court.

The support that the SBA provides for its position that this court should afford deference to the decisions of the SBA falls short. Specifically, the SBA argues that the "agency is entitled to a 'presumption of regularity,' meaning that the Court will 'presume that [public officers] have properly discharged their official duties' in the absence of clear evidence to the contrary.'" Resp. Br. 25 *citing Almy v. Sebelius*, 679 F. 3d 297 (4th Cir. 2012). Post-*Loper*, this is not a viable position.

Even accepting, *arguendo*, that *Loper* does not apply, the SBA's assertion that the courts will afford deference to the SBA's decision on the basis of the "presumption of regularity" is not supported by this Court's very recent holding in *Pharm. Coal*. Further, the "presumption" that the SBA reviewed and relied upon a document for which there is no evidence that it existed or was, in fact, reviewed

and relied upon by the SBA as it is absent from the Administrative Record, is not a minor or procedural issue. The 1502 report is the asserted basis by the SBA for the decision in June of 2020 to stop payments. The existence of that report along with other evidence of the reasoning why that report impacted the loan payments, would establish that the decision was not "arbitrary and capricious." That is the very crux of the issue before this court and cannot be simply accepted as fact under a "presumption of regularity." To do so would negate the entire purpose of attempting to challenge the decision of the agency.

Likewise, the SBA's cite to *Ohio Valley Envtl. Coal., Inc. v. Aracoma Coal Co., 556 F. 3d 177* (4th Cir. 2009) to establish the level of deference afforded the agency's decision is misplaced. Unlike the instant matter, *Ohio Valley* concerns the interpretation of the agency's regulations for which the Auer standard is applied. "Because we are asked here to review the Corps' interpretation of its own regulations, our review is cabined to assessing the reasonableness of that interpretation. This kind of review is highly deferential, with the agency's interpretation "controlling unless plainly erroneous or inconsistent with the regulation." *Ohio Valley* at 193 citing *Auer v. Robbins,* 519 U.S. 452, 461 (1997) The matter before this Court concerns the interpretation of statutes, a different standard governed Loper and not governed by the Auer standard.

There can be no question that the regulations governing the CARES Act were, at best, ambiguous as extraordinarily little guidance or direction was provided. The only stated criteria for acceptance into the loan reimbursement program was that the loan be in "regular servicing," and not one that should have been removed from regular servicing. JA197-198. This is the crux of the legal disagreement. The SBA has expanded the language to identify the PSI loan as "should have been removed" from regular servicing because of a high principal, because of modifications that were permitted under the loan terms and reviewed and approved by the lender, and because of a delay in payment of principal. None of these specifically identify a loan as "bad" and none of those are identified in the regulations themselves as being disqualifying writ large or as occurrences that would require a loan to be removed from regular servicing. The District Court should thus be reversed because, even assuming *arguendo* it was not "arbitrary and capricious" based on the legal issues above -- most of which the SBA as conceded by failure to address in its Appellee Brief -- the District Court allowed a statutory interpretation by the SBA that was "not in accordance with law," 5 U.S.C. §706(2)(a), *i.e.*, not in accordance with Congress' intent in enacting Section 1112 of the CARES Act. Congress has expressed no intent, whether in the text of the statute or otherwise, to allow the SBA a "bad loan" exception to subsidy payments under Section 1112 of the CARES Act.

21

## CONCLUSION

This fact is undisputed: there is nothing in the Administrative Record to which the SBA can point that formed the basis for (1) its June 2020 decision to stop the Section 1112 loan payments, or (2) its denial of PSI's administrative claim. Neither decision, the result of which amounts to an expansion of the CARES Act to include a "bad loan" exception to the CARES Act, is entitled to any deference. Moreover, the SBA breached, and continues to breach, its duty under the 5th Amendment to provide PSI with "notice and an opportunity to be heard . . . at a meaningful time and in a meaningful manner," which has caused continuing damages to PSI in excess of $3,914,303.23, the amount due for the third through sixth payments under the CARES Act. For all the reasons set forth above and in PSI's opening brief, PSI respectfully requests that the decision of the lower court be reversed.

## REQUEST FOR ORAL ARGUMENT

Appellant PSI respectfully requests oral argument on the legal issues presented. Oral argument will allow for the clear presentation of the Administrative Record on which the District Court ruled against PSI, and the legal issues on which this Court should reverse the District Court's ruling.

Respectfully submitted this February, 11, 2024.

*Milton C. Johns*
Milton C. Johns
EXECUTIVE LAW PARTNERS, PLLC

11130 Fairfax Blvd, Suite 303
Fairfax, VA 22030
P: 571 500 1010
F: 571 408 8104
mjohns@xlppllc.com

*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

1.  This document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

This document contains 5,596 words.

2.  This document complies with the typeface requirements because:

This document has been prepared in a proportional spaced typeface using Microsoft Word in 14-point Times New Roman.

*Milton C. Johns*
Milton C. Johns
*Counsel for Appellant*